FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 19

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41167-9-II |
| Respondent, | |
| v. | Consolidated with |
| DAYLAN ERIN BERG, and JEFFREY S. REED, | |
| Appellants. | |
| STATE OF WASHINGTON, | No. 41173-3-II |
| Respondent, | |
| v. | |
| JEFFREY S. REED, | PART PUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — After a jury trial, Daylan Berg and Jeffrey Reed were each convicted of five counts: attempted first degree murder, first degree burglary, first degree kidnapping, first degree robbery, and intimidating a witness.[1] In special verdicts, the jury found that Berg and Reed committed each of the five counts while armed with a firearm and that the attempted murder was of a police officer performing his official duties. Berg and Reed appeal their convictions, arguing that (1) the exclusion of an observer from the courtroom violated their

---

[1] Reed was also convicted of first degree unlawful possession of a firearm.

public trial rights and was erroneous as a matter of courtroom operations and (2) insufficient evidence supports their kidnapping convictions. We hold that because no courtroom closure occurred, the trial court did not violate Berg and Reed's public trial rights and further hold that any courtroom operations error was harmless. In addition, because we follow our decision in *State v. Korum*, 120 Wn. App. 686, 86 P.3d 166 (2004), *aff'd in part and rev'd in part on other grounds*, 157 Wn.2d 614, 141 P.3d 13 (2006), we vacate the kidnapping convictions for insufficient evidence.

In the unpublished portion of this opinion, we address Berg's and Reed's other contentions: (1) Berg and Reed argue that the State committed prosecutorial misconduct by making improper remarks during closing argument and their counsel were ineffective for failing to object to these remarks, (2) Berg argues that insufficient evidence supports his conviction for witness intimidation, (3) Berg and Reed argue that the special verdict instructions violated their right to a unanimous verdict, (4) Reed argues that a witness's opinion on Reed's state of mind violated his right to a jury trial, and (5) Reed argues that cumulative error warrants reversal of his convictions. In a pro se Statement of Additional Grounds, Reed further argues (1) evidentiary error, (2) additional improper remarks in closing argument, (3) instructional error, (4) additional ineffective assistance of counsel, and (5) erroneous denial of motions for mistrial. Aside from the insufficiency of the kidnapping evidence, we reject Berg's and Reed's arguments. We affirm Berg's and Reed's convictions, except that we remand to the trial court to vacate Berg's and Reed's first degree kidnapping convictions and to resentence them accordingly.

FACTS

A.    *Substantive Facts*

Albert Watts was an authorized medical marijuana user who lived in a rented house in Vancouver, Washington. Berg and Reed learned that Watts grew marijuana in a workshop located in a walled-off portion of his garage.

One evening, Watts was alone in the workshop tending to the marijuana plants when Berg and Reed kicked in the door. Holding a handgun, Reed ordered Watts to the ground. Berg took the gun and pinned Watts to the floor, threatening to shoot him if he moved. Reed then went inside the house and took Watts's cell phone and wallet. Reed then loaded the marijuana plants into a white car.

When Reed finished loading the car, he returned to the workshop. Berg stopped pinning Watts to the floor, and Reed asked whether Watts would call the police. Watts answered that he would tell the police "nothing." 24 Verbatim Report of Proceedings (VRP) at 1000.

After Reed told Watts to remain on the floor for fifteen minutes, Berg and Reed left. Three or four minutes after they left, Watts stood up and walked inside his house. Later, during Berg and Reed's flight from the scene, Berg shot a police officer, Sergeant Jay Alie.

B.    *Procedural Facts*

The State charged Berg and Reed with five counts each: attempted first degree murder, first degree burglary, first degree kidnapping, first degree robbery, and intimidating a witness. The State sought firearm enhancements for all five counts and also charged an aggravating factor on the attempted first degree murder count, based on Sergeant Alie's status as a police officer. In addition, the State charged Reed with first degree unlawful possession of a firearm.

During the trial, the trial court allowed undercover officers from the Vancouver Police Department to be present in the courtroom to augment the security provided by uniformed officers from the Clark County Sheriff's office. Joel Wyman, a friend of Berg and Reed's, observed the beginning of trial from the courtroom gallery. During a recess on the third day of trial, a Sheriff's custody officer asked Wyman to leave the courtroom, and a Vancouver police detective questioned him on suspicion of intimidating a witness during a trial held the previous week. After the questioning ended, a courthouse security officer informed Wyman that "he was being trespassed from the trial, but could return to the Courthouse if he had other business to attend to." Clerk's Papers (CP) (Reed) at 471.

The trial court had not authorized any officers to exclude Wyman from the courtroom and did not learn of Wyman's exclusion until Berg objected to it. The trial court denied the objection and Berg's subsequent motion for a mistrial, explaining that it had excluded no one from the courtroom and that Wyman was free to return. Further, the trial court entered an order stating that no one should be excluded from the courtroom absent good cause. However, Wyman did not return to observe the trial because he feared arrest.

Berg and Reed appeal their convictions.

## ANALYSIS

### I. EXCLUSION OF A COURTROOM OBSERVER

Berg and Reed argue that their convictions should be reversed because the exclusion of a courtroom observer, their friend Wyman, was a courtroom closure that violated their constitutional rights to a public trial. We disagree that Wyman's exclusion constituted a courtroom closure. Berg further argues that reversal is warranted because the exclusion of

4

No. 41167-9-II
Cons. wi No. 41173-3-II

Wyman amounted to a usurpation of the trial court's authority over courtroom operations. We disagree that reversal is warranted because any error in courtroom operations was harmless.

A.     *Public Trial Rights*

Berg and Reed argue that their constitutional rights to a public trial were violated when police officers excluded Wyman from the courtroom during their trial. We disagree because the exclusion of a single person is not a courtroom closure.

Both the United States Constitution and the Washington Constitution protect (1) a criminal defendant's right to a public trial, U.S. CONST. amend VI and WASH. CONST. art. I, § 22; and (2) the public's right to the open administration of justice, U.S. CONST. amend I and WASH. CONST. art. I, § 10. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). A trial court violates these rights if it closes the courtroom during a public proceeding, unless the trial court had previously determined that closure is warranted under the five-part test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).[2] *Wise*, 176 Wn.2d at 12.

---

[2] The five criteria are:
>    1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
>    2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
>    3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
>    4. The court must weigh the competing interests of the proponent of closure and the public.
>    5. The order must be no broader in its application or duration than necessary to serve its purpose.

*Bone-Club*, 128 Wn.2d at 258-59 (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)) (alteration in original).

5

No. 41167-9-II
Cons. wi No. 41173-3-II

Whether a courtroom closure violates a defendant's right to a public trial or the public's right to the open administration of justice is a question of law reviewed de novo. *State v. Momah*, 167 Wn.2d 140, 147, 217 P.3d 321 (2009). Whether a courtroom closure in fact occurred also is a question reviewed de novo. *See Wise*, 176 Wn.2d at 12; *State v. Lormor*, 172 Wn.2d 85, 92-93, 257 P.3d 624 (2011).

Our Supreme Court recently decided that the exclusion of only one person from an otherwise open courtroom does not constitute a closure.[3] *Lormor*, 172 Wn.2d at 93. Instead, the closure of a trial or similar proceeding "occurs when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." *Lormor*, 172 Wn.2d at 93.

Under *Lormor*, Wyman's exclusion was not a courtroom closure. *See* 172 Wn.2d at 92-93. Although police detained Wyman outside the courtroom while questioning him on suspicion that he had committed a crime, Wyman was the only person excluded and the courtroom remained open. And despite what the security officer told Wyman, the trial court stated that Wyman was allowed to return to observe the trial. Because no courtroom closure occurred, the

---

[3] In *Presley v. Georgia*, 558 U.S. 209, 209-10, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010), the United States Supreme Court held that a closure occurred when the trial court excluded a single observer from the courtroom—but he was the *only* observer present. Interpreting *Presley* and *Waller v. Georgia*, 467 U.S. 39, 47, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984), our Supreme Court decided that, in the context of a trial, a closure occurs when the trial takes place in a courtroom that is "closed to *all* potential spectators." *Lormor*, 172 Wn.2d at 91-92.

6

trial court did not violate Berg and Reed's right to a public trial or the public's right to the open

administration of justice.[4] *Wise*, 176 Wn.2d at 12. Berg and Reed's public trial argument fails.

B.     *Courtroom Operations*

Relying on *Lormor*, 172 Wn.2d at 93, Berg also argues that, even if no courtroom closure

occurred, reversal is warranted because the officer who excluded Wyman also usurped the trial

court's inherent power to preserve and enforce order in the courtroom.[5] We disagree that

reversal is warranted.

1. *Improper Exclusion*

When public trial rights are not implicated, we analyze the exclusion of a person from a

courtroom as a matter of courtroom operations. *Lormor*, 172 Wn.2d at 93. Trial courts possess

broad inherent power and statutory authority over courtroom operations. *Lormor*, 172 Wn.2d at

93-94.

---

[4] To support their argument that their Sixth Amendment right to a public trial was violated by the exclusion of Wyman alone, Berg and Reed cite numerous cases from other states and the federal courts of appeals. But we are bound to follow decisions of the Washington Supreme Court and, where federal law is concerned, the United States Supreme Court. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 590, 146 P.3d 423 (2006); *Sims v. Georgia*, 385 U.S. 538, 544, 87 S. Ct. 639, 17 L. Ed. 2d 593 (1967). In contrast, "a vast majority" of the state supreme courts that have considered the issue have decided they are not bound by decisions of the inferior federal courts on questions of federal law or constitutional interpretation. *Hall v. Pa. Bd. of Probation & Parole*, 851 A.2d 859, 863-64 (Pa. 2004) (collecting cases, but none from Washington); *see Strange v. Spokane County*, 171 Wn. App. 585, 593, 287 P.3d 710 (2012), *review denied*, 177 Wn.2d 1016 (2013) (decisions of the federal courts of appeals are persuasive authority).

[5] Our Supreme Court decided *Lormor* after Berg and Reed filed their opening briefs but before the State filed its responsive brief. Thus, Berg makes this argument for the first time in reply, but after the State argued *Lormor*. Ordinarily, we do not consider arguments raised for the first time in a reply brief. RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). But the ends of justice require us to do so here. RAP 1.2(c).

We review matters of courtroom operations for an abuse of discretion. *Lormor*, 172 Wn.2d at 94. A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). When a decision is within a trial court's discretion but the trial court fails to exercise discretion at all, the trial court abuses its discretion. *State v. Flieger*, 91 Wn. App. 236, 242, 955 P.2d 872 (1998).

Here, the trial court did not exclude Wyman from the courtroom. To the contrary, upon learning that Wyman had been excluded, the trial court entered an "Order on Public Access to the Courtroom" stating that Berg and Reed had "an undisputed right to have the public present during trial" and that no courtroom observer should be excluded from the courtroom, absent good cause or the court's permission. CP at 186-87 (Reed).

However, police officers removed Wyman from the courtroom, detained him elsewhere, and barred his return to the courtroom during the trial—all without the trial court's knowledge or authority. During a recess, a custody officer asked Wyman to step out of the courtroom. In the hallway, Detective Darren McShea of the Vancouver police asked to question Wyman about his conduct as a courtroom observer during another trial held the previous week. "With some prompting," Wyman agreed to discuss the matter in a nearby conference room. CP at 471 (Reed). During the questioning, "Wyman twice asked if he was free to leave," but Detective McShea said Wyman "was being detained for investigation." CP at 471 (Reed). Detective McShea then told Wyman that "his conduct the previous week had not gone unnoticed and that continued behavior of that nature could subject him to arrest for intimidating witnesses." CP at 471 (Reed). Wyman denied knowing what Detective McShea meant. CP at 471 (Reed). After

the questioning, a courthouse security officer informed Wyman that "he was being trespassed from [Berg and Reed's] trial, but could return to the Courthouse if he had other business to attend to." CP at 471 (Reed). Despite the trial court's order affirming the public's right to observe the trial, Wyman did not return for fear of arrest.

The trial court rightly called these events "troubling." 35 VRP at 2480. By purporting to ban Wyman from returning to the courtroom to observe the trial, the Vancouver police officers and Clark County Sheriff's deputies usurped the trial court's authority over courtroom operations.[6] In effect, they nullified the exercise of the trial court's discretion. That is improper and, as a matter of courtroom operations, erroneous.

2. *Harmless Error*

Berg contends that reversal of his convictions is required for an error of courtroom operations. We disagree because the error was harmless.

We review matters of courtroom operations in the same manner that we review a trial court's evidentiary rulings. *Lormor*, 172 Wn.2d at 94-95. Thus, an error of courtroom operations is harmless unless it is prejudicial. *See State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). An error is prejudicial only if the trial's outcome would have been materially affected had the error not occurred. *Cunningham*, 93 Wn.2d at 831.

---

[6] We do not doubt that police may lawfully detain individuals to investigate crimes. But we are aware of no authority allowing police to ban an individual from attending a particular trial after a lawful detention has ended.

9

Here, there was no prejudice. Wyman's exclusion occurred during a recess, outside of the jury's presence. Nothing in the record shows that Wyman's attendance or absence had any effect on the trial's outcome.

Arguing to the contrary, Berg contends that the trial court's order on public access came too late because "[t]he damage was already done": six witnesses testified in Wyman's absence before the order was entered. Reply Br. of Appellant at 11 (Berg). But Berg does not show that the trial's outcome was materially affected by Wyman's exclusion. Therefore, the error of courtroom operations was harmless, and reversal is unwarranted. *Cunningham*, 93 Wn.2d at 831.

## II. SUFFICIENCY OF THE EVIDENCE

Berg and Reed next argue that insufficient evidence supports their convictions for one count each of first degree kidnapping. We agree that the evidence is insufficient to support their first degree kidnapping convictions.

Due process requires that, to obtain a criminal conviction, the State must prove every element of the charged offense beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980); *see In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). When a defendant challenges the sufficiency of the evidence supporting his conviction, we examine the record to decide whether any rational trier of fact could have found that the State met its burden to obtain the conviction. *Green*, 94 Wn.2d at 221-22 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). We consider the evidence and all reasonable inferences from it in the light most favorable to the State. *State v. McPhee*, 156 Wn. App. 44, 62, 230 P.3d 284, *review denied*, 169 Wn.2d 1028 (2010).

10

Relying on the incidental restraint doctrine applied in *State v. Korum*, 120 Wn. App. 686, 86 P.3d 166 (2004), *aff'd in part and rev'd in part on other grounds*, 157 Wn.2d 614, 141 P.3d 13 (2006), Berg and Reed argue that the evidence is insufficient to convict them of first degree kidnapping. We note that Division One of this court has declined to follow *Korum*, calling it "wrongly decided." *State v. Phuong*, 174 Wn. App. 494, 508, 299 P.3d 37 (2013), *petition for review filed*, No. 88889-2 (Wash. May 31, 2013); *State v. Grant*, 172 Wn. App. 496, 498, 301 P.3d 459 (2012), *review denied*, 177 Wn.2d 1021 (2013). Similarly, Division Three has limited *Korum* to cases where the prosecutor has acted vindictively or overcharged the defendants. *State v. Butler*, 165 Wn. App. 820, 830-31, 269 P.3d 315 (2012). We adhere to *Korum* and we vacate Berg's and Reed's convictions for first degree kidnapping. Respectfully, we disagree with Divisions One and Three.

A.      *Korum and the Incidental Restraint Doctrine* ·

The parties dispute whether the incidental restraint doctrine we applied in *Korum*, 120 Wn. App. 686, is required by our Supreme Court's decision in *Green*, 94 Wn.2d 216. Likewise, the split among the Courts of Appeals over the vitality of the incidental restraint doctrine is, in reality, a dispute about the meaning of *Green*.[7] Consistent with our decision in *Korum*, we now hold that *Green* requires application of the incidental restraint doctrine in this challenge to the sufficiency of the evidence of first degree kidnapping.

---

[7] We have previously explained that "[a]lthough *Green* borrowed the 'incidental restraint' concept from an earlier merger case, it incorporated this concept into a new standard for determining sufficiency of evidence on appeal." *In re Pers. Restraint of Bybee*, 142 Wn. App. 260, 266-67, 175 P.3d 589 (2007) (footnote omitted). According to Division One, "*Green* did no such thing." *Grant*, 172 Wn. App. at 505.

11

1. *The Incidental Restraint Doctrine Is Required by Green*

A person commits first degree kidnapping "if he or she intentionally abducts another person with intent . . . [t]o facilitate commission of any felony or flight thereafter." RCW 9A.40.020(1)(b).[8] The critical element of abduction can take three forms, all of which necessarily involve restraint: (1) restraint by secreting the victim in a place where he or she is not likely to be found, (2) restraint by threats of deadly force, or (3) restraint by the use of deadly force. *Green*, 94 Wn.2d at 225; *see* RCW 9A.40.010(1). A restraint is defined as a restriction on a person's movements that is without the person's consent, is without legal authority, and interferes substantially with the person's liberty. RCW 9A.40.010(6).[9]

In *Green*, our Supreme Court held that when the State presents only evidence of conduct that was merely incidental to the commission of another crime, no rational trier of fact could find that the evidence proves beyond a reasonable doubt that the conduct was a restraint. *Green*, 94 Wn.2d at 227, 229-30. That is the incidental restraint doctrine.

Given the incidental restraint doctrine, the killing of a murder victim "does not, in and of itself, establish kidnapping" because the act of killing does not prove a restraint. *Green*, 94

---

[8] The legislature added gender-neutral language to RCW 9A.40.020 in 2011. LAWS OF 2011, ch. 336, § 364.

[9] In 2011, the legislature further amended RCW 9A.40.010 to define terms related to human trafficking. LAWS OF 2011, ch. 111, § 2. The amendments do not affect our analysis.

Wn.2d at 228. Thus the *Green* court held that a murderer did not also commit a kidnapping by killing his victim.[10] *Green*, 94 Wn.2d at 229.

The outcome in *Green* depended on a narrow interpretation of the word "restraint" in the kidnapping statute. *Green* explained,

> In the broadest sense the infliction of a fatal wound is the ultimate form of "restraint" because it obviously "restrict[s] a person's movement . . . in a manner which interferes substantially with [the person's] liberty." RCW 9A.40.010(1). If such logic is applied to the law of kidnapping, however, *every* intentional killing would also be a kidnapping because the killing itself would supply the requisite "restraint" (*i.e.*, the killing being the ultimate form of "restraint").

*Green*, 94 Wn.2d at 229 (alterations in original).

Applying this narrow interpretation of "restraint," the *Green* court analyzed the sufficiency of the evidence of kidnapping by examining each of the three recognized forms of abduction: (1) restraint by secreting the victim, (2) restraint by threats of deadly force, and (3) restraint by use of deadly force other than the killing itself.[11] *Green*, 94 Wn.2d at 225-28. The evidence was insufficient to prove any of the three forms of abduction. *Green*, 94 Wn.2d at 228.

In holding that the evidence failed to show restraint by secretion, the *Green* court decided that proof was lacking of *both* restraint *and* secretion. The evidence showed no secretion because the murderer "could hardly have chosen a more public place to accost his victim or

---

[10] We disagree with the State's contention that the incidental restraint doctrine effectively adds a nonstatutory element to the definition of kidnapping. Instead, the incidental restraint doctrine derives from a narrow interpretation of the statutory element of restraint.

[11] The *Green* court framed the State's argument as inviting the court to recognize a fourth form of abduction: restraint by use of deadly force *including* the killing itself. *Green* refused this invitation. 94 Wn.2d at 228-29.

13

commit the homicide some 2 to 3 minutes later." *Green*, 94 Wn.2d at 226. Further, the evidence

showed no restraint because

> although [the murderer] lifted and moved the victim [approximately 20 to 50 feet], it is clear these events were actually an integral part of and not independent of the underlying homicide. While movement of the victim occurred, the mere *incidental* restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping.

*Green*, 94 Wn.2d at 226-27.

The State argues that the foregoing passage was dictum because the *Green* court "had

already found there was no evidence of the element of restraint." Suppl. Br. of Resp't at 4. We

disagree. A statement in an opinion is dictum if it is unrelated to the issues before the court and

unnecessary to decide the case. *State v. Potter*, 68 Wn. App. 134, 149 n.7, 842 P.2d 481 (1992).

But in this passage the *Green* court explained *why* there was no evidence of restraint despite the

murderer's forcible movement of the victim. Thus this passage was necessary to *Green*'s

decision, and it is not dictum.

Next, with a terse analysis, the *Green* court decided that the evidence was also

insufficient to prove restraint by threats of deadly force or restraint by use of deadly force other

than the killing itself. First, there was no restraint by threats of deadly force because the record

contained no evidence of any threats. *Green*, 94 Wn.2d at 228. Likewise, there was no evidence

of any use of deadly force other than the killing itself. *Green*, 94 Wn.2d at 228. Therefore

*Green* held the evidence insufficient to prove any of the three forms of abduction. *Green*, 94

Wn.2d at 230.

In *Korum*, we applied the holdings of *Green* and vacated a defendant's kidnapping

convictions for insufficient evidence where the only evidence of restraint was conduct incidental

14

to a series of home invasion robberies. *Korum*, 120 Wn. App. at 707, 719. Although our Supreme Court reversed on other grounds, it declined to reach the incidental restraint issue because the State inadequately briefed it. *Korum*, 157 Wn.2d at 625, 652-53. We now hold that *Korum*'s application of the incidental restraint doctrine was required by *Green*.

 2. *Reasons for Rejecting the Incidental Restraint Doctrine*

Rejecting *Korum*'s application of the incidental restraint doctrine, Divisions One and Three have reasoned that (1) *Green* involved a charge of aggravated first degree murder, not kidnapping; (2) *Green*'s entire discussion of incidental restraint was dicta; and (3) the incidental restraint doctrine is inappropriate absent evidence of prosecutorial vindictiveness and overcharging. We address each reason in turn.

First, the charge in *Green* was aggravated first degree murder; the murder was aggravated if the killing occurred in the course of or in the furtherance of a kidnapping. *Green*, 94 Wn.2d at 219, 229. Emphasizing the importance of the aggravated first degree murder charge, Division One has confined *Green*'s holding to the "crime-within-a-crime" context. *Phuong*, 174 Wn. App. at 520. But this confinement contradicts *Green*'s statement of the issue it decided: whether the State had proven the elements of "kidnapping [as defined in] RCW 9A.40.020." 94 Wn.2d at 219; *see also id.* at 224-25. Nothing in *Green* suggests that the elements of kidnapping vary according to whether it is the charged offense or a crime within a crime.

Second, Division One has concluded that *Green*'s entire discussion of the incidental restraint doctrine was dicta addressing merger—a double jeopardy issue—*not* the due process requirement that the evidence must be sufficient to prove each element beyond a reasonable doubt. *Phuong*, 174 Wn. App. at 517, 521 n.21. In support of this conclusion, Division One

15

examined the majority and dissenting opinions in three cases: *Green*, 94 Wn.2d 216, an earlier

decision referred to as "*Green* I" (*State v. Green*, 91 Wn.2d 431, 588 P.2d 1370 (1979)), and

*State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979). *Phuong*, 174 Wn. App. at 514-21.

We disagree with Division One because *Green*'s discussion was clearly not dicta; rather,

it is necessary to *Green*'s result. But for *Green*'s holding that evidence of conduct incidental to a

murder is not sufficient to prove the restraint element of kidnapping, *Green* would have decided

that the murderer committed a kidnapping when he restrained his victim by killing her.

Nonetheless, we admit that Division One's conclusion has doctrinal appeal, in that it

preserves distinctions between sufficiency of the evidence and merger. Yet our Supreme Court's

decision on an issue of state law remains binding on us until our Supreme Court overrules it.

*State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). As Judge Becker noted in dissent from

Division One's rejection of the incidental restraint doctrine, "[our] Supreme Court's most recent

reference to the [incidental restraint] issue expressly affirms the continuing vitality of *Green*."[12]

*Grant*, 172 Wn. App. at 511.

Third, Division Three has suggested that the incidental restraint doctrine applies only

where, as in *Korum*, the court believes that prosecutorial vindictiveness has led to overcharging.

*Butler*, 165 Wn. App. at 831. *Korum* applied the incidental restraint doctrine set forth in *Green*,

but *Green* says nothing about prosecutorial vindictiveness or overcharging. *Butler* does not

address *Green*'s discussion of incidental restraint.

---

[12] In *State v. Brett*, 126 Wn.2d 136, 166, 892 P.2d 29 (1995), our Supreme Court cited *Green* and wrote: "This court has held and the State concedes that the mere incidental restraint and movement of the victim during the course of another crime which has no independent purpose or injury is insufficient to establish a kidnapping."

We respectfully disagree with the courts that have rejected *Korum*. Accordingly, we follow *Korum* and apply the incidental restraint doctrine here.

B.     *The Evidence Is Insufficient To Prove Kidnapping*

As stated above, abduction is an element of first degree kidnapping. RCW 9A.40.020(1). Abduction can take three forms, all of which necessarily involve restraint: (1) restraint by secreting the victim in a place where he or she is not likely to be found, (2) restraint by threats of deadly force, or (3) restraint by the use of deadly force. *Green*, 94 Wn.2d at 225; *see* RCW 9A.40.010(1). When the State presents only evidence of conduct that was merely incidental to the commission of another crime, no rational trier of fact could find that the evidence proves beyond a reasonable doubt that the conduct was a restraint. *Green*, 94 Wn.2d at 229-30.

Whether a restraint was incidental to the commission of another crime is a fact-specific determination. *State v. Elmore*, 154 Wn. App. 885, 901, 228 P.3d 760, *review denied*, 169 Wn.2d 1018 (2010). As a matter of law, a restraint was incidental to the commission of a home invasion robbery when (1) facilitating the robbery was the restraint's sole purpose, (2) the restraint was inherent in the robbery, (3) the robbery victims were not transported from their home to a place where they were not likely to be found, (4) the restraint did not last substantially longer than necessary to complete the robbery, and (5) the restraint did not create a significant independent danger. *Korum*, 120 Wn. App. at 707; *see State v. Lindsay*, 171 Wn. App. 808, 843, 288 P.3d 641 (2012) (merger case citing *Korum*), *review granted on other grounds*, 177 Wn.2d 1023 (2013). In all five of these respects, this case is indistinguishable from *Korum*.

Arguing to the contrary, the State contends that this case is distinguishable from *Korum* and *Green* in three ways. First, the State asserts that Berg and Reed did not restrain Watts in his

workshop to facilitate the robbery, but instead to prevent others from helping Watts during the robbery. But nothing in the record supports this assertion; moreover, preventing a robbery victim from obtaining help would facilitate the robbery.

Second, the State contends that Berg and Reed restrained Watts for substantially longer than necessary because as they fled they told Watts to remain on the floor for fifteen minutes. But this is no different from *Korum*, where the robbers fled the scene with some of their victims' hands tied and those victims loosened their restraints after about five minutes. 120 Wn. App. at 707 & n.19. Similarly, Watts testified that he stood up and went inside his house three or four minutes after Berg and Reed left.

Third, the State argues that Berg and Reed secreted Watts inside his workshop where he was unlikely to be found, but there was no secretion in *Green* because the murder occurred in a semipublic place. But the State fails to explain or support its assertion that "[s]ecreting Watts was unnecessary in order to commit robbery." Br. of Resp't at 40. Therefore we do not consider it. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Citing *State v. Allen*, 94 Wn.2d 860, 621 P.2d 143 (1980), the State further contends that Berg and Reed kidnapped Watts by restraining him by threat or use of deadly force while they fled the scene of their robbery. But *Allen* is distinguishable. In *Allen*, two robbers restrained a convenience store clerk at gunpoint inside their car while one of them brought the cash register drawer from the store to the car. 94 Wn.2d at 861. The robbers then drove two blocks away before forcing the clerk out of the car. *Allen*, 94 Wn.2d at 861. Our Supreme Court held that the kidnapping and robbery did not merge because restraining the clerk inside the fleeing car was not incidental to the robbery. *Allen*, 94 Wn.2d at 864. Here, the merger doctrine is not at issue.

18

Further, like the robbers in *Korum*, 120 Wn. App. at 707, Berg and Reed fled *without* their robbery victim. The State's contention is unpersuasive.

Because the State's only evidence of kidnapping was conduct that was merely incidental to the robbery, the evidence is not sufficient under *Green* and *Korum* to support Berg's and Reed's convictions for first degree kidnapping. Therefore we vacate these convictions.

In the unpublished portion of this opinion, we consider Berg's and Reed's remaining arguments. We reverse Berg's and Reed's first degree kidnapping convictions but affirm all other convictions, and we remand to the trial court to vacate Berg's and Reed's first degree kidnapping convictions and to resentence them accordingly.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

A.      *Substantive Facts*

During the robbery, Watts's neighbor called 911 to report suspicious men removing items from Watts's home. She also described a white car she believed to be involved.

Minutes later, Sergeant Alie observed a white car resembling the neighbor's description, and he pulled it over. As Sergeant Alie approached, he observed Berg and Reed in the front and marijuana plants in the back seat. Sergeant Alie noticed that Reed, the driver, was staring straight ahead with his hands on the steering wheel. Both the driver's and passenger's windows were rolled down and the engine was running.

Sergeant Alie went to the driver's window and told Reed to turn off the engine. Reed paused and then ducked his upper body toward the center console of the interior, so that his head was below the steering wheel. Sergeant Alie reached inside to grab Reed, but Berg reached over Reed's body and shot Sergeant Alie in the chest from about one foot away. Sergeant Alie fell to the ground, but his protective vest stopped the bullet from penetrating his body. Berg and Reed drove away.

Reed was arrested later that night; police found Watts's cell phone in his front pocket. Berg was arrested the following day.

B.      *Procedural Facts*

Reed filed a motion in limine to prevent Sergeant Alie from giving an opinion about Reed's state of mind when he leaned his body forward, just before Berg shot Sergeant Alie. The trial court granted the motion. But during his testimony, Sergeant Alie opined that Reed made "a real willful, intentional movement" by leaning forward in his seat. 24 VRP at 1142. Berg and Reed immediately objected, and the trial court admonished Sergeant Alie to not express his opinion on Reed's state of mind, which was a matter for the jury to decide. The trial court also instructed the jury to disregard Sergeant Alie's opinion. Later, Reed's counsel declined to cross-examine Sergeant Alie.

Berg and Reed moved for a mistrial on the grounds that Sergeant Alie's opinion violated the trial court's order in limine and invaded the province of the jury. Although the trial court stated that Sergeant Alie unnecessarily used words that "are linked to the elements" of first degree murder, the trial court denied the motion because (1) Sergeant Alie expressed an opinion that Reed moved purposefully as opposed to accidentally, but did not express an opinion about

20

an element of any charge; and (2) the trial court gave a curative instruction to the jury in response to Berg and Reed's immediate objection. 24 VRP at 1165.

During the State's closing argument, the prosecutor discussed the jury's role, the reasonable doubt standard, and the evidence presented. First, the prosecutor stated that "in its best and most pure form, the practice of law should be a search for truth." 29 VRP at 2240. The prosecutor further stated that the jury's role was "to determine and declare the truth in this case." 29 VRP at 2242. Next, in discussing the reasonable doubt standard, the prosecutor equated it with the process used to arrive at an important decision in one's everyday affairs. Last, the prosecutor repeatedly suggested that certain elements of the offenses were undisputed.

Berg and Reed did not object during the State's closing argument, but when it ended they moved for a mistrial based solely on the references to undisputed elements. The trial court agreed that the references were improper and gave the jury a curative instruction, but it denied the motion for mistrial.

The trial court also refused three jury instructions proposed by Reed. The proposed instructions (1) stated that rendering criminal assistance is a lesser offense included in complicity for attempted first degree murder, (2) defined rendering criminal assistance, and (3) stated that complicity is not established by the mere act of driving a car with knowledge that a passenger has committed a crime.

On special verdict forms, the jury was asked to decide facts supporting firearm enhancements for each of the five counts and an aggravating factor for the count of attempted first degree murder. The trial court's jury instructions directed the jury to unanimously answer

either yes or no on the special verdict forms. The jury found Berg and Reed guilty on all counts

and determined that the State proved the firearm enhancements and aggravating factor.

## ANALYSIS

### I. IMPROPER REMARKS

Berg and Reed argue that the State made improper remarks in its closing argument, and

thus their convictions for attempted first degree murder[13] should be reversed because (1) the

prosecutor committed misconduct or (2) defense counsel were ineffective for failing to object.

We disagree that their convictions should be reversed.

A.      *Prosecutorial Misconduct*

Berg and Reed first argue that the prosecutor committed misconduct by making improper

remarks during closing argument. We hold that the remarks were improper, but reversal is

unwarranted because the impropriety did not prejudice Berg and Reed.

Prosecuting attorneys are quasi-judicial officers charged with the duty of ensuring that

defendants receive a fair trial. *State v. Boehning*, 127 Wn. App. 511, 518, 111 P.3d 899 (2005).

Prosecutorial misconduct violates that duty and can constitute reversible error. *Boehning*, 127

Wn. App. at 518. We will reverse a conviction when the defendant meets his burden of

establishing that (1) the prosecutor acted improperly and (2) the prosecutor's improper act

prejudiced the defendant. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

1. *Impropriety*

---

[13] Berg and Reed argue that the prosecutor's improper remarks warrant reversal of only the
convictions for attempted first degree murder, given the closeness of the evidence on
premeditation. They do not argue that the improper remarks warrant reversal of their other
convictions.

In closing argument, the prosecutor made two improper remarks. First, it is improper for a prosecutor to state that the jury's role is to declare the truth or to search for truth. *Emery*, 174 Wn.2d at 760. Here, the prosecutor stated that "in its best and most pure form, the practice of law should be a search for truth," and further stated that the jury's role was "to determine and declare the truth in this case" by arriving at a verdict. 29 VRP at 2242. These statements are improper because "[t]he jury's job is not to determine the truth of what happened . . . . Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt." *Emery*, 174 Wn.2d at 760.

Second, it is also improper for a prosecutor to equate the reasonable doubt standard with the degree of certainty used to make everyday decisions, whether on important or minor matters. *State v. Anderson*, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009). Here, the prosecutor stated that the reasonable doubt standard requires the jury to adopt

> the same sort of frame of mind that we require in any important decision we make. Say, a decision to marry or a decision to make a significant investment. What we do in those scenarios, hopefully, is to consider all of the facts, the pros, the cons, the ups, the downs, consider all the facts in an objective, reasonable way, and then determine a course of action.
> And the point I would make to you is that we're never certain if that marriage is going to succeed or that investment is going to pay off big time, but we have an abiding belief in the decision that we made, we . . . believe the decision to marry or make that investment was a correct one.
> And that's where we are in the question of our burden of proof, the question of reasonable doubt.

29 VRP at 2243-44. These statements are "improper because they minimized the importance of the reasonable doubt standard and of the jury's role in determining whether the State has met its burden." *Anderson*, 153 Wn. App. at 431.

23

### 2. *Prejudice*

Because the prosecutor made improper remarks, we next determine whether the remarks prejudiced Berg and Reed. *Emery*, 174 Wn.2d at 760. We hold they did not.

#### a. *Standards of Review*

In analyzing the prejudice caused by an improper remark during closing argument, we consider the entire context of the argument, the issues in the case, the evidence, and the trial court's jury instructions. *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). We review whether misconduct prejudiced the defendant under one of two different standards of review.[14] *Emery*, 174 Wn.2d at 760.

First, if the defendant objected at trial, then we ask whether there is a substantial likelihood that the State's misconduct prejudiced the defendant by affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. But where the defendant failed to object to the State's misconduct at trial, we apply a heightened standard of review. *Emery*, 174 Wn.2d at 760-61. Under this heightened standard of review, the defendant is deemed to have waived any error unless the State's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61.

---

[14] Citing *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009), Berg and Reed assert that the constitutional harmless error standard applies, so that prosecutorial misconduct warrants reversal "where there is a substantial likelihood the improper conduct affected the verdict." Br. of Reed at 25. But our Supreme Court has rejected the constitutional harmless error standard where the defendant failed to object to a prosecutor's improper remarks, at least in cases that do not involve the deliberate injection of racial bias. *Emery*, 174 Wn.2d at 757-59.

Here, Berg and Reed did not object to the prosecutor's statements. Thus, we apply the heightened standard of review to determine whether the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice.[15] *Emery*, 174 Wn.2d at 760-61. To make that determination, we consider what would have happened if Berg and Reed had timely objected. *Emery*, 174 Wn.2d at 763.

b. *Prejudice Resulting from Improper Search for the Truth Remark*

A prosecutor's improper search for truth remark can confuse the jury about its role and the burden of proof. *Emery*, 174 Wn.2d at 763. But a proper instruction can dispel that confusion. *Emery*, 174 Wn.2d at 764 (citing *Warren*, 165 Wn.2d at 28 (defendant brought a timely objection to a similar search for the truth remark)). Because the trial court could have cured any prejudice resulting from the prosecutor's search for the truth remark, the remark does not warrant reversal given the heightened standard of review. *Emery*, 174 Wn.2d at 760-61.

c. *Prejudice Resulting from Improper Reasonable Doubt Remark*

The improper comparison of the reasonable doubt standard to everyday decision making trivializes the reasonable doubt standard. *Anderson*, 153 Wn. App. at 431. But in *Anderson* we held that an instruction could have cured the prejudice resulting from the improper remark. 153 Wn. App. at 432. Because an instruction could have cured the prejudice resulting from both

---

[15] Relying on *State v. Johnson*, 158 Wn. App. 677, 685, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013 (2011), Berg and Reed argue that the prosecutor's statements were flagrant and ill-intentioned because they misstated the reasonable doubt standard. But *Emery* clarified our role: "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." 174 Wn.2d at 762. To the extent that *Johnson* focuses on the flagrant and ill-intentioned quality of misconduct, rather than the effect of a hypothetical curative instruction, *Emery* abrogated *Johnson*.

improper remarks, Berg and Reed's prosecutorial misconduct argument fails. *Emery*, 174 Wn.2d at 760-61.

B.    *Ineffective Assistance of Counsel*

Berg and Reed next argue that their counsel's failure to object to the prosecutor's remarks constituted ineffective assistance of counsel. We disagree.

Both the federal and state constitutions guarantee criminal defendants effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

In reviewing ineffective assistance of counsel claims, we begin with a strong presumption of counsel's effectiveness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the performance prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700. We hold that the failure of Berg's and Reed's counsel to object was not deficient.

Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Counsel's conduct is not deficient if it "can be characterized as legitimate trial strategy or tactics." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Berg and Reed argue that their counsel recognized the prosecutor's improper remarks and decided not to object, but instead to respond during the defense's closing argument. This response evidences a tactical decision

26

about the appropriate way in which to neutralize the remarks' effect. Because that tactical decision can be characterized as legitimate, it does not overcome our strong presumption of counsel's effectiveness. *Kyllo*, 166 Wn.2d at 863; *McFarland*, 127 Wn.2d at 335. This argument fails.

## II. SUFFICIENCY OF THE EVIDENCE

Berg further argues that insufficient evidence supports his conviction for witness intimidation. We disagree.

When a defendant challenges the sufficiency of the evidence supporting his conviction, we examine the record to decide whether any rational trier of fact could have found that the State proved the offense beyond a reasonable doubt. *Green*, 94 Wn.2d at 221-22. In a challenge to the evidence's sufficiency, the defendant admits the truth of all the State's evidence; therefore we consider the evidence and all reasonable inferences from it in the light most favorable to the State. *McPhee*, 156 Wn. App. at 62. Further, circumstantial evidence and direct evidence are equally reliable. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). But the proof of a fact cannot rest on mere "guess, speculation, or conjecture." *State v. Colquitt*, 133 Wn. App. 789, 796, 137 P.3d 892 (2006).

To convict Berg of witness intimidation, the State was required to prove that Berg or Reed, acting as Berg's accomplice, threatened Watts to induce him not to report information relevant to a criminal investigation. RCW 9A.08.020(1), .72.110(1)(d). Reed acted as Berg's accomplice if (1) Berg *either* (a) solicited, commanded, encouraged, or requested Reed to intimidate Watts *or* (b) aided or agreed to aid Reed in intimidating Watts; *and* (2) Berg had general knowledge that his conduct would promote or facilitate Reed's act of witness

intimidation. RCW 9A.08.020(3)(a); *State v. Roberts*, 142 Wn.2d 471, 513, 14 P.3d 713 (2000). Berg challenges only the second element.

Here, Watts testified that at the end of the robbery, Berg stopped pinning Watts to the floor and asked Reed what to do with respect to Watts. Reed told Watts that he had his wallet and knew where he lived; he then asked if Watts would call the police. Watts answered that he would tell the police "nothing." 24 VRP at 1000. He further testified that Berg and Reed said "[t]hey would hunt me down and kill me" if he went to the police. 24 VRP at 1017.

Because Berg asked Reed what to do with Watts, Berg asserts that the record cannot show that he had general knowledge that his conduct would promote or facilitate Reed's act of witness intimidation. We disagree. Viewed in the light most favorable to the State, Berg's question was a prompt for Reed to threaten Watts with harm if he contacted the police. A rational trier of fact could reasonably infer that Berg knew his prompt would promote or facilitate Reed's intimidation of Watts. Thus, the evidence was sufficient to support Berg's conviction as an accomplice to Reed's witness intimidation of Watts.

Arguing to the contrary, Berg relies on *Colquitt*, 133 Wn. App. at 796, and asserts that proof of his knowledge cannot rest solely on "guess, speculation, or conjecture." Br. of Appellant at 20 (Berg). But Berg misapprehends *Colquitt*. *Colquitt* stands for the proposition that proof of a fact cannot rest on *a witness's* guess, speculation, or conjecture.[16] 133 Wn. App.

---

[16] In *Colquitt*, a police officer testified that he saw a substance that "appeared to be rock cocaine." 133 Wn. App. at 792 (internal quotation marks omitted). Because the record contained no evidence of the officer's training or experience in the visual identification of cocaine, we held that the officer's visual identification was a bald statement amounting only to a conjecture. 133 Wn. App. at 800-02. That conjecture was insufficient to prove that the substance was cocaine. 133 Wn. App. at 802.

at 801-02. But *Colquitt* also states that *the trier of fact* may rely on circumstantial evidence and draw reasonable inferences from the evidence. 133 Wn. App. at 796, 800.

In effect, Berg asserts it is unreasonable to infer that Berg knew Reed would threaten to harm Watts if he went to the police. Contrary to this assertion, that inference is *reasonable* because Berg tried to prevent Watts from making observations that would incriminate Berg and Reed. While Berg pinned Watts to the ground at gunpoint, Berg told Watts to look straight down at the floor; Berg threatened to kill Watts "[w]henever [Watts] tried to turn [his head] either way." 24 VRP at 998. Because it is reasonable to infer that Berg knew Reed would also intimidate Watts, Berg's argument fails.

### III. UNANIMITY JURY INSTRUCTION

Relying on *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010), Berg and Reed next argue that the trial court erred by instructing the jury that its special verdict on an aggravator or sentence enhancement must be unanimous. But our Supreme Court has overruled its decision in *Bashaw*. *State v. Nuñez*, 174 Wn.2d 707, 709-10, 285 P.3d 21 (2012). Thus, it is not error to instruct a jury to return a unanimous special verdict in a criminal case. *Nuñez*, 174 Wn.2d at 709-10.

Here, the trial court instructed the jury that its answer to the special verdict forms must be unanimous. This instruction was correct. *Nuñez*, 174 Wn.2d at 709-10. Berg and Reed's argument fails.

29

No. 41167-9-II
Cons. wi No. 41173-3-II

IV. MOTION FOR MISTRIAL DUE TO IMPROPER OPINION TESTIMONY

Reed further argues that the trial court erred by denying his motion for a mistrial after Sergeant Alie expressed an improper personal opinion on Reed's state of mind. Again, we disagree.

We review the denial of a motion for a mistrial for an abuse of discretion. *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Rohrich*, 149 Wn.2d at 654.

A trial court should grant a motion for mistrial only when an irregularity has so prejudiced the defendant that only a new trial can remedy the error. *Greiff*, 141 Wn.2d at 920-21. Here, an irregularity occurred when Sergeant Alie's testimony violated an order in limine excluding all testimony expressing "any *conclusion or opinion* as to [Reed's] intent, state [of] mind, or theoretical objective or purpose" when he ducked under the car's steering wheel just before Sergeant Alie was shot. *See* ER 701; CP at 112 (Reed). During the State's direct examination, Sergeant Alie described his approach to the car after he pulled it over:

> [ALIE]: Car was still running. . . . I said, "Turn the car off."
> Then there's a beat where there's nothing, no response at all. Suddenly [Reed] makes a real willful, intentional movement (indicating)—
>
> [REED'S COUNSEL]: Objection, Your Honor.
>
> [BERG'S COUNSEL]: Objection. .
>
> THE COURT: All right. I'll sustain the objection.

30

(To witness:) Officer, you need to describe what it is that you saw. It's for the jurors to decide what . . . the mental state of any particular person is.
(To jurors:) The personal opinions of the officer in that regard should be disregarded by you.

24 VRP at 1142-43. Berg and Reed moved for a mistrial.

Reed argues that the trial court erroneously denied the motion for mistrial because Sergeant Alie's opinion testimony violated the order in limine and invaded the province of the jury. In determining whether an irregularity caused prejudice warranting a mistrial, we examine (1) the seriousness of the irregularity, (2) whether the irregularity involved cumulative evidence, and (3) whether the trial court gave a proper curative instruction. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). We hold that the trial court did not abuse its discretion in denying the motion.

A.    *Seriousness*

As the trial court acknowledged, the irregularity here was serious. *See State v. Thompson*, 90 Wn. App. 41, 46, 950 P.2d 977 (1998). A violation of an order in limine can warrant a mistrial, even though it does not necessarily do so. *State v. Clemons*, 56 Wn. App. 57, 62, 782 P.2d 219 (1989). Further, a police officer's opinion testimony on a criminal defendant's state of mind is "clearly inappropriate."[17] *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008) (citing *State v. Farr-Lenzini*, 93 Wn. App. 453, 463, 970 P.3d 313 (1999)). While

---

[17] The State denies that Sergeant Alie's testimony expressed an inadmissible opinion. But this denial ignores the trial court's ruling on Berg and Reed's evidentiary objection: the trial court excluded Sergeant Alie's testimony because it expressed an improper opinion. Thus we consider only the issue presented by this appeal: whether the trial court erred by refusing to declare a mistrial.

denying the motion for mistrial, the trial court stressed the seriousness of the irregularity by warning Sergeant Alie that any additional opinion testimony would raise "the risk that [the trial court] will have to start this trial over again." 24 VRP at 1166.

However, other facts mitigate the seriousness of the irregularity. The trial court found that Sergeant Alie did not express an opinion about an element of the crime, such as whether Berg and Reed had a premeditated intent to cause Sergeant Alie's death. Instead, Sergeant Alie's testimony described—albeit with a gratuitously "poor choice of words"—his observation that Reed's movement appeared to be a volitional act as opposed to an accident. 24 VRP at 1165. Standing alone, the seriousness of the violation of the order in limine does not require a mistrial.

B.    *Cumulative Evidence*

Next, Reed asserts that the irregularity did not involve cumulative evidence. This assertion misstates the record. The trial court sustained the objection to Sergeant Alie's testimony and then directed the State to restate its question. In response to the restated question, Sergeant Alie testified that he directed Reed to turn off the car but Reed did not comply. Instead, Reed "bent over, ducking towards the center console area" of the car. 24 VRP at 1143. Berg and Reed did not object to this testimony or mention it while arguing their motion for a mistrial. Given Sergeant Alie's admissible testimony, the majority of his inadmissible opinion involved cumulative evidence.

C.    *Curative Instruction*

Third, the trial court gave a proper curative instruction. After sustaining Berg and Reed's immediate objection to Sergeant Alie's statement, the trial court instructed the jurors to disregard

Sergeant Alie's opinion. Later, when charging the jury, the trial court instructed the jury to consider only the evidence admitted at trial and not to consider any testimony ruled inadmissible. Together, these instructions cured any prejudice from the inadmissible opinion testimony.

Arguing to the contrary, Reed asserts that the trial court's instruction failed to cure the prejudice for two reasons: (1) Alie's opinion testimony invaded the province of the jury[18] and (2) a police officer's testimony carries an aura of reliability.[19] But, absent evidence to the contrary, we presume that jurors followed a trial court's instructions. *Montgomery*, 163 Wn.2d at 596. For that reason, whether the trial court properly instructed the jury is important to determining whether opinion testimony prejudiced a defendant. *Montgomery*, 163 Wn.2d at 595. Reed identifies no evidence to rebut the presumption that the jury followed the trial court's instructions and did not consider Sergeant Alie's inadmissible opinion testimony at all.

The trial court did not abuse its discretion in denying Berg and Reed's motion for a mistrial. *See Rohrich*, 149 Wn.2d at 654. Thus Reed's argument fails.

---

[18] By invading the province of the jury, the admission of improper opinion testimony may violate the defendant's constitutional right to a jury trial. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (plurality opinion). But not every opinion expressed by a witness amounts to a constitutional violation. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007) ("The assertion that the province of the jury has been invaded may often be simple rhetoric."). Moreover, Reed cites no authority for the proposition that the *exclusion* of improper opinion testimony can invade the province of the jury.

[19] Our Supreme Court has recognized that the testimony of police witnesses carries an "'aura of reliability'" that may heighten the danger of opinion testimony. *Montgomery*, 163 Wn.2d at 595 (quoting *Demery*, 144 Wn.2d at 765).

## V. Cumulative Error

Lastly, Reed argues that cumulative error warrants the reversal of his convictions. We disagree.

The cumulative error doctrine may warrant reversal of a defendant's conviction if the combined effect of several errors deprived the defendant of a fair trial, even if each error standing alone would not warrant reversal. *Greiff*, 141 Wn.2d at 929 (citing *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984)). The defendant has not had a fair trial when, considering the trial's scope, the errors' combined effect materially affected its outcome. *See State v. Russell*, 125 Wn.2d 24, 94, 882 P.2d 747 (1994). However, the cumulative error doctrine does not warrant reversal when a trial has few errors with little or no impact on the outcome. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). When applying the cumulative error doctrine, we consider errors committed by the trial court as well as instances of misconduct by other participants, such as prosecutors or witnesses. *See Greiff*, 141 Wn.2d at 929 (collecting cases); *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813, *review denied*, 170 Wn.2d 1003 (2010).

Reed argues that reversal is warranted by the cumulative effect of three errors: (1) Sergeant Alie's improper opinion testimony, (2) the prosecutor's trivialization of the reasonable doubt standard, and (3) the prosecutor's improper characterization of the jury's task as a search for the truth.[20] But considering the full scope of this trial, we are convinced that these errors did

---

[20] Reed also asserts that the trial court erroneously instructed the jury to unanimously answer the questions on the special verdict forms. Because we held that these instructions were not erroneous, we do not consider them in this cumulative error analysis. *See Russell*, 125 Wn.2d at 94.

not materially affect the outcome. *Russell*, 125 Wn.2d at 94. Because Reed had a fair trial, the cumulative error doctrine does not warrant reversal of his convictions. *Greiff*, 141 Wn.2d at 929.

## SAG

In his pro se SAG, Reed raises five additional arguments. All lack merit.

### I. EVIDENTIARY ERROR

Reed first argues that the trial court erroneously admitted[21] Watts's cell phone as evidence because police obtained the phone "in violation of his 4th amendment rights." SAG at 1. But Reed does not state why he believes the search violated his rights. Because Reed's SAG fails to inform us of the nature and occurrence of an alleged error, we do not consider this argument. RAP 10.10(c); *State v. Bluehorse*, 159 Wn. App. 410, 436, 248 P.3d 537 (2011).

### II. IMPROPER ARGUMENT

Asserting another act of prosecutorial misconduct, Reed argues that reversal is warranted because the State's closing argument shifted the burden of proof to the defense and referred to the defendants' silence when suggesting that certain evidence was undisputed. We disagree that reversal is warranted.

Prosecutorial misconduct warrants reversal of a conviction when the defendant meets his burden of establishing that (1) the prosecutor acted improperly and (2) the prosecutor's improper act prejudiced the defendant. *Emery*, 174 Wn.2d at 756. Although the prosecutor's remarks about undisputed evidence were improper, they did not prejudice Reed.

---

[21] Reed challenges the trial court's "[a]dmission of evidence," not its denial of his motion to suppress evidence. SAG at 1.

During closing argument, the prosecutor suggested that certain elements were undisputed. Berg and Reed objected after the State completed its argument, and the trial court ruled that the prosecutor's suggestions were improper.

Because Reed objected, we ask whether there is a substantial likelihood that the improper suggestion prejudiced Reed by affecting the verdict. *Emery*, 174 Wn.2d at 760. We answer in the negative.

After sustaining Reed's objection, the trial court gave a curative instruction to the jury:

> During the course of the prosecutor's argument on two issues, he briefly referenced the idea that those issues were undisputed.
> That's an inaccurate statement of the law. As I advised you both at the beginning and during my instructions, the entry of the plea of not guilty puts in issue every element of each crime charged. And it's the State's burden to, if they wish to convince you to convict someone of a crime, convince you on all issues with evidence beyond a reasonable doubt. Otherwise it's your duty to find a person not guilty of that crime.
> So to the extent that the argument suggested that something was undisputed, that was inaccurate and you should disregard that argument.

29 VRP at 2308-09.

Because jurors are presumed to follow the trial court's instructions, this instruction cured the prejudice resulting from the prosecutor's improper suggestion. *See Montgomery*, 163 Wn.2d at 596. Thus, Reed's argument fails.

### III. INSTRUCTIONAL ERROR

Reed next argues that the trial court committed three errors in instructing the jury on the charge of attempted first degree murder. Specifically, Reed argues that the trial court erred by (1) failing to instruct the jury on rendering criminal assistance as a lesser included charge to complicity to commit attempted first degree murder, (2) refusing to instruct the jury on the

definition of rendering criminal assistance, and (3) refusing to instruct the jury that the mere act of driving a car with knowledge that a passenger has committed a crime does not by itself establish that the driver acted as an accomplice to the passenger's crime. We hold that the trial court committed no error.

A.      *Lesser Included Instruction*

Reed first argues that the trial court erred by denying his request to instruct the jury that first degree rendering criminal assistance is a lesser offense included in attempted first degree murder. This argument lacks merit.

A lesser included instruction is required only when the offenses and evidence satisfy the two-pronged *Workman* test, consisting of a legal prong and a factual prong. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). We hold that rendering criminal assistance and accomplice liability for attempted first degree murder fail to satisfy the legal prong.

We review a trial court's ruling on the legal prong de novo. *State v. LaPlant*, 157 Wn. App. 685, 687, 239 P.3d 366 (2010). Two offenses satisfy the *Workman* test's legal prong if each element of the lesser offense is also a necessary element of the charged offense. *LaPlant*, 157 Wn. App. at 687.

Here, the charged offense and the lesser offense do not satisfy the legal prong because none of the elements of the lesser offense are elements of the charged offense. The lesser offense, first degree rendering criminal assistance, has two elements: (1) *intent* to prevent, hinder, or delay the apprehension or prosecution of another person who he knows has committed or is being sought for first degree murder; and (2) *conduct* consisting of harboring or concealing the person, warning the person of impending discovery or apprehension, providing the person

37

with means of avoiding discovery or apprehension, preventing or obstructing anyone from possibly aiding in the discovery or apprehension of the person, concealing or altering evidence that might aid in the person's discovery or apprehension, or giving the person a weapon. RCW 9A.76.050, .070(1).

Neither of the lesser offense's two elements is also a necessary element of the charged offense, attempted first degree murder. RCW 9A.28.020(1), .32.030(1). Therefore the two offenses fail to meet the legal prong, and a lesser included instruction is not required. *LaPlant*, 157 Wn. App. at 687. Reed's argument fails, and we do not address the factual prong.

B.    *Instruction on Rendering Criminal Assistance*

In the alternative, Reed next argues that the trial court erred by refusing to instruct the jury on the definition of first degree rendering criminal assistance, even though the State did not charge rendering criminal assistance and the trial court ruled that it was not a lesser included offense. This argument also lacks merit.

The standard of review for a refusal to give a requested jury instruction depends on whether the refusal was based on a matter of law or fact. *State v. Walker*, 136 Wn.2d 767, 771, 966 P.2d 883 (1998). If the refusal was based on a matter of law, our review is de novo; if it was based on a matter of fact, we review the refusal for an abuse of discretion. *Walker*, 136 Wn.2d at 771-72. Here, the trial court refused Reed's requested instruction as a matter of law because it is inappropriate to instruct the jury on the definition of an offense that the State has not charged when it is not a lesser included offense. Thus, our review is de novo. *Walker*, 136 Wn.2d at 772.

Jury instructions are proper when they permit the parties to argue their case theories, do not mislead the jury, and properly inform the jury of the applicable law. *State v. Mark*, 94

38

Wn.2d 520, 526, 618 P.2d 73 (1980). Reed argues that the trial court's refusal to instruct the jury on the definition of rendering criminal assistance prevented him from arguing his theory of the case: namely, that he was not complicit to Berg's attempted first degree murder of Sergeant Alie, but instead merely rendered criminal assistance by driving away after the shooting. We disagree.

Simply put, Reed's theory was that the State failed to prove beyond a reasonable doubt that Reed acted as an accomplice when Berg shot Sergeant Alie. Taken together, the trial court's jury instructions on the reasonable doubt standard, accomplice liability, and attempted first degree murder allowed Reed to argue this theory. Reed's argument fails.

C.   *Instruction on a Driver's Complicity for a Passenger's Crime*

Citing *State v. Robinson*, 73 Wn. App. 851, 872 P.2d 43 (1994), Reed argues that the trial court erred by refusing to specifically instruct the jury that, standing alone, the mere act of driving a car with knowledge that a passenger has committed a crime cannot establish that the driver acted as an accomplice to the passenger's crime. But *Robinson* is inapposite.

*Robinson* involved a challenge to the sufficiency of the evidence, not to jury instructions. 73 Wn. App. at 852. A precedential case holding that certain evidence is not sufficient to prove an element beyond a reasonable doubt does not warrant a specific jury instruction on the insufficiency of certain evidence. *State v. Veliz*, 76 Wn. App. 775, 778, 888 P.2d 189 (1995).

Further, as a matter of law, the trial court's refusal was correct. As the trial court explained: "If . . . the evidence was insufficient to submit [this] case to the jury, then it wouldn't be my job to instruct the jury about that[;] it would be my job to dismiss the case." 29 VRP at 2180; *See Veliz*, 76 Wn. App. at 778-79 n.6. Reed's arguments of instructional error fail.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Reed next claims that he received ineffective assistance of counsel because his trial counsel "did very little cross examination" and did not ask Sergeant Alie any questions. SAG at 2. This claim fails because his counsel's performance was not deficient.[22]

Both the federal and state constitutions guarantee criminal defendants effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. But our constitutions do not guarantee a criminal defendant the successful assistance of counsel. *State v. Dow*, 162 Wn. App. 324, 336, 253 P.3d 476 (2011). We review ineffective assistance of counsel claims de novo. *Sutherby*, 165 Wn.2d at 883.

In reviewing claims of ineffective assistance, we begin with a strong presumption of counsel's effectiveness. *McFarland*, 127 Wn.2d at 335. A defendant claiming ineffective assistance of counsel has the burden to establish that counsel's performance (1) was so deficient that it deprived the defendant of his constitutional right to counsel and (2) prejudiced the defendant's case. *Strickland*, 466 U.S. at 687. Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

---

[22] Reed also bases his claim of ineffective assistance of counsel on two grounds that we do not address. First, Reed asserts that his counsel refused Reed's request to question the jury after it delivered its verdict. This claim is not reviewable because the record does not disclose that Reed asked his counsel to question the jury after its verdict. When a claim of ineffective assistance of counsel is based on matters outside the trial court record, we do not consider the claim in a direct appeal, but the defendant may raise it in a personal restraint petition. *See McFarland*, 127 Wn.2d at 335. Second, Reed claims that "overall [his counsel] did very little of anything throughout the trial." SAG at 2. This claim is so vague that it fails to inform us of the nature and occurrence of an alleged error. RAP 10.10(c); *Bluehorse*, 159 Wn. App. at 436.

Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. Counsel's conduct is not deficient if it "can be characterized as legitimate trial strategy or tactics." *Kyllo*, 166 Wn.2d at 863. Here, Reed's argument fails because his counsel's performance in cross-examining the State's witnesses was not deficient.

In general, counsel's decision about "'whether and how much to cross-examine'" is a matter of trial tactics. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 735, 16 P.3d 1 (2001) (quoting *State v. Piche*, 71 Wn.2d 583, 590, 430 P.2d 522 (1967)). Here, the record shows that Reed's counsel decided to avoid cross-examining Sergeant Alie specifically because he feared the "grave risk" of testimony that would express an opinion on Reed's state of mind when he ducked inside the car. 24 VRP at 1162. These decisions can be characterized as legitimate trial tactics and thus are not a deficient performance. *Kyllo*, 166 Wn.2d at 863. Reed's claim of ineffective assistance fails.

## V. MOTIONS FOR MISTRIAL

Lastly, Reed argues that the trial court erroneously denied "numerous motions for mistrial based on conduct that occurred throughout [the] trial and cumulative error that exist in the record of [the] case." SAG at 2. We disagree.

In considering the arguments raised in Reed's briefing, we have already addressed his arguments that (1) the trial court twice erred in denying his motions for mistrial and (2) the cumulative error doctrine warrants reversal of his convictions; we do not consider those arguments again in Reed's SAG. The only other motion for a mistrial followed the prosecutor's

41

improper suggestion that some elements were undisputed. In support of this motion, Reed argued that the suggestion constituted prosecutorial misconduct and violated an order in limine.

We review the denial of a motion for a mistrial for an abuse of discretion. *Greiff*, 141 Wn.2d at 921. A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Rohrich*, 149 Wn.2d at 654. But Reed's SAG does not offer any basis on which we could conclude that the trial court abused its discretion by denying the motion for mistrial and giving a curative instruction to the jury. This argument fails.

We affirm in part and reverse in part. We affirm Berg's and Reed's convictions, except that we reverse their convictions for first degree kidnapping due to insufficient evidence. Accordingly, we remand for resentencing consistent with this opinion.

_____
Worswick, C.J.

We concur:

_____
Johanson, J.

_____
Tollefson, J.P.T.